IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILMA E. ROMERO,

        Plaintiff,

vs.                                                       No. 99cv1420 MV/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

        This matter is before the Court on Plaintiff's (Romero's) Motion to Reverse or Remand the Administrative Decision, filed July 21, 2000. The Commissioner of Social Security issued a final decision denying Romero's applications for disability insurance benefits and supplemental security income. The Court, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion is well taken and recommends that it be GRANTED.

        Romero, now forty-seven years old, filed her applications for disability insurance benefits and supplemental security income on November 14, 1996, alleging a disability which commenced December 28, 1995, due to arthritis in the right knee, diabetes and obesity. She has a high school education with past relevant work as an assembly line worker (electronic assembler). The Commissioner denied Romero's applications for disability insurance benefits and supplemental security income both initially and on reconsideration.

After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found Romero had the severe impairments of right knee injury with valgus deformity and arthritis, and diabetes mellitus, but these impairments solely or in combination did not meet or equal the listings. The ALJ specifically reviewed §§ 1.03 and 9.08 of the Listing of Impairments. Additionally, the ALJ found Romero's nonexertional factors had not significantly altered her ability to do sedentary work. The ALJ determined Romero retained the residual functional capacity (RFC) for "at least sedentary work." Tr. 18. The ALJ also found Romero's "testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility." *Id.* Thus, the ALJ concluded Romero was not disabled within the meaning of the Social Security Act. The Appeals Council denied Romero's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Romero seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand the administrative decision, Romero argues the ALJ's decision is not supported by substantial evidence, the Commissioner failed to carry his burden of proof, and failed to apply correct legal standards to this case.

The ALJ found Romero retained the residual functional capacity to perform sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567 (a).

At the administrative hearing, Romero testified she had suffered a knee injury and had undergone surgery to repair the damage in 1997. Tr. 29. Romero further testified her doctor had recommended a total knee replacement when she got older. Tr. 30. Romero had a cane with her at the hearing and reported needing a cane to get around. Tr. 32. Romero testified she could walk for about half a block before she experienced "lot of pain" and could not stand for five or ten minutes because her knee would "give out". Tr. 32, 33. Romero also testified it was hard for her to sit for long periods of time because it was hard for her to get up. *Id.* Romero had been diagnosed with diabetes about eight months prior to the administrative hearing. Romero testified she was taking insulin for her diabetes but was still having problems keeping her blood sugar levels down. Tr. 31, 32. Romero also testified her knee pain prevented her from doing her housework and shopping and thus her husband and sons had taken over these duties. Tr. 34, 35.

According to Romero, the evidence supports a finding that she meets Listing 1.03. Under Listing 1.03, a claimant is disabled if she meets the following criteria.

> ***Arthritis of a major weight-bearing joint (due to any cause):***
>
> ***With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With:***
>
> ***A. Gross anatomical deformity of hip or knee (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) supported by x-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand; or***
>
> ***B. Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.***

20 C.F.R. P. 404, Subpt. P, App. 1, § 1.03.

On February 17, 1997, Dr. Jan Hamilton performed a consultative examination on Romero and found a pronounced valgus deformity of the right knee, greater than the left knee. Tr. 109.  At the time of the examination, it had been a little over one year since Romero had suffered an injury to her right knee that had required surgical intervention.  *Id.*  Dr. Hamilton also noted Romero's impairment affected her ability to stand or walk and therefore Romero could only stand or walk for about 45 minutes without interruption.  Tr. 112.  However, Dr. Hamilton found Romero's impairment did not affect Romero's ability to sit.  Tr. 113.

On August 8, 1997, Dr. Junick, an orthopedic surgeon and Romero's treating physician, diagnosed Romero with severe osteoarthritis of the lateral compartment of the right knee.  Tr. 126.  Dr. Junick also found Romero lacked about 5 degrees of full extension of the right knee and suffered from a moderate varus[1] laxity of about 1 cm joint opening.  Tr. 128.  The x-rays indicated "severe osteoarthritis of the right knee with complete loss of her lateral joint space with bone on bone picture."  Tr. 129.  Dr. Junick opined Romero faced a poor prognosis.  *Id.*  Dr. Junick recommended a conservative course of treatment of physical therapy and anti-inflammatory medication.  *Id.*  Dr. Junick also informed Romero that an arthroscopy to debride the joint would give her only temporary relief from her pain and at some point she would need a knee replacement.  *Id.*  Dr. Junick opined that because of her obesity, diabetes and young age a knee replacement would be wrought with potential complications.  *Id.*

On September 4, 1997, Dr. Junick examined Romero after undergoing two weeks of physical therapy.  Tr. 127.  Romero reported no improvement since her last visit and complained

---

[1] Bent or twisted inward toward the midline of the limb or body. *Stedman's Medical Dictionary* 1908 (26th ed. 1995).

5

of pain that was "relatively severe"and requested arthroscopic intervention. *Id*. Romero also reported the Motrin had not helped her pain. *Id.* Dr. Junick scheduled her for an arthroscopy and prescribed Lortab 5, a narcotic analgesic. *Id.*

On September 22, 1997, Dr. Junick examined Romero three days after undergoing the arthroscopy and informed Romero she should experience six months to a year of relief from her pain. Tr. 126. Dr. Junick also discussed the need for a knee replacement "relatively soon in the future" but preferred to wait until she was closer to fifty years of age  *Id.*  Dr. Junick discussed the possibility of using some hyaluronic acid injections in her knee when her symptoms returned and some other "temporizing measures" as well. *Id.* On that same day, Dr. Junick wrote a letter to the Social Security Education Officer, stating Romero had undergone a lateral meniscectomy in the past and had now developed significant degenerative joint disease. Tr. 125. In his letter, Dr. Junick opined "any work which [Romero] could perform would be limited to sedentary activities only." *Id.* Dr. Junick also noted Romero's need for a knee replacement some time in the future. *Id.*

On January 7, 1998, Dr. Hammar, Romero's primary care physician, submitted a letter stating Romero suffered from severe arthritis of her knees and was being treated with hyalgan[2] injections into her knees. Tr. 131.

Citing *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996), Romero contends the ALJ erred

---

[2]    Hyalgan is a viscous solution consisting of a high molecular weight fraction of purified natural sodium hyaluronate. Hyalgan is indicated for the treatment of pain in osteoarthritis of the knee in patients who have failed to respond adequately to conservative nonpharmocologic therapy and to simple analgesics. *Physician's Desk Reference* 2785-2787 (53rd ed. 1999).

6

when she failed to provide her analysis for her conclusion that Romero did not meet Listing 1.03 and thus this case should be remanded.  The Court agrees.  In *Clifton v. Chater*, the Court of Appeals for the Tenth Circuit held that an ALJ could not merely state a summary conclusion that claimant's impairments did not meet or equal any listed impairment but was required to discuss the evidence or his/her reasons for determining that claimant was not disabled at step three.  In this case, the ALJ stated in her decision that she had considered Listing 1.03 but did not give her reasons for her conclusion that Romero did not meet or equal this listing.

The evidence indicates Romero suffered severe osteoarthritis and abnormal motion (moderate varus laxity) of her right knee with x-rays indicating complete loss of her lateral joint space with bone on bone picture.  At the administrative hearing Romero testified she could only walk for about half a block and stand for five or ten minutes.  Romero also testified about disabling pain.  However, the ALJ found Romero's "testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility."  Tr. 18.

While it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  The ALJ's credibility determination is not supported by substantial evidence.  A remand is required due to this omission.  *Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995).  On remand, the ALJ should reevaluate Romero's credibility and link her credibility determination with specific evidence of record.

In evaluating a claim of disabling pain, the proper analysis requires the ALJ to consider (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a

loose nexus between this objective evidence and the pain and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)). In this case, the ALJ did not expressly follow this analysis. On remand the ALJ should expressly follow the *Luna* pain analysis.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and her decision is not supported by substantial evidence. Romero's Motion to Reverse and Remand Administrative Decision, filed July 21, 2000, should be granted. This case should be remanded to the Commissioner for the ALJ to set out her specific findings and her reasons for not accepting or rejecting evidence at step three, to reevaluate Romero's credibility and link her credibility determination with specific evidence of record, and to evaluate Romero's claim of disabling pain applying the *Luna* pain analysis.

                              **JOE H. GALVAN**
                              **UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.